# IN THE UNITED STATES DISTRICT COURT
## For the District of Pennsylvania

Christopher Alsop

vs

Warden, D.K. White
AHSA, Bret Brosious
FNP-BC, Catherine Gore

FILED
SCRANTON
AUG 2 5 2020
PER_____ DEPUTY CLERK

Civil No.

(Mariani, J.)
(Saporito, M.)

### Bivens Complaint

Come now, Christopher Alsop, pro se plaintiff, and for is complaint to Bivens, seeking compensatory and punitive damages.

The reason for this Bivens complaint is to avoid the expiration of the limitations period to bring deliberate indifference against these (3) three named above defendants.

1. The defendant argued in his previous motion to dismiss and/or summary judgment in the Civil No. 317cv-2307, that the plaintiff failed to exhaust his administrative remedies involving Warden D.K. White, Catherine Gore, and Bret Bosious before filing suit. See Doc 47.
2. In the plaintiff's Fifth Amendment complaint (filed Oct. 7, 2019) he argued his previous counselor, Martin D. Russell, used intimidation/threat and refused to give him a grievance form. So, the plaintiff amended his complaint before exhaustion of his administrative remedies because the grievance process was unavailable, but the plaintiff continued working through the prison internal system in good faith to exhaust his grievance. See Doc 130.
3. The defendants argued it newly motion to dismiss and/or summary judgment that they did not waive their right to seek summary judgment for failure to exhaust administrative remedies and may seek summary judgment in the future for failing to exhaust administrative remedies. See Doc 159.
4. The plaintiff exhausted his deliberate indifference claim involving D.K. White, Bret Brosius, and Catherine Gore on August 30, 2019, that required a two year limitation period to file suit; the deadline ends on August 30, 2020. The defendants have filed a previous judgment motion arguing that the plaintiff failed to exhaust his administrative remedies before filing suit (see Doc 47). The plaintiff is now filing an additional suit so he does not miss the two year limitation deadline.

A. Name: Christopher Alsop
B. List of all aliases: Deaf Boy
C. Prisoner identification number:
D. Place of present confinement:
E. Address: 286 Mayview Forest Drive, Cincinnati, OH 45215

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

**Defendant(s):**

In A below, place the name of the first defendant, his/her official position, and his/her place of employment. Space for two additional defendants is provided in B and C.

A. Defendant: Catherine Gore, being sued in her personal and official capacity.
   Title: FNP/BC
   Place of employment: LSCI Allenwood (Health Services), White Deer, PA 17887
B. Defendant: Bret Brosious, being sued in his personal and official capacity.
   Title: Assistant Health Service Administrator
   Place of Employment: LSCI Allenwood (Health Services), White Deer, PA 17887
C. Defendant: D.K. White, being sued in his personal and official capacity.
   Title: Warden
   Place of Employment: LSCI Allenwood (Health Services), White Deer, PA 17887

(If there are more than three defendants, then each defendant must be listed according to the above format on a separate sheet of paper.)

**Exhaustion of Administrative Remedies:**

(You are required to exhaust all of your available administrative remedies before bringing an action in federal court.)

A. Is there a grievance procedure available at your institution? Yes.
B. Have you filed a grievance concerning the facts in this complaint? Yes.
C. If your answer is YES, what steps did you take? Filed a grievance to the Warden, Northeast Regional and the central office.
D. What was the result? All grievances were denied.
E. If the grievance was not resolved to your satisfaction, did you appeal? Yes.
F. What was the result? (If there was no procedure for appeal, so state.) All grievances were denied.
G. Is the grievance procedure now completed? Yes.
H. If there is no grievance procedure in the institution, did you complain to authorities? Yes.

I. If your answer is YES, what steps did you take? Filed a grievance to the Warden, Northeast Regional and the central office.
J. What was the result? All grievances were denied.

Case 3:20-cv-01520-RDM   Document 1   Filed 08/25/20   Page 3 of 18

List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court.

   A. Name of case and docket number: Civil no. 3:17-cv-23-7
   B. Approximate date of filing lawsuit: December 12, 2017
   C. List all plaintiffs (and co-plaintiffs, if applicable), including any aliases: Christopher Alsop, AKA, Deaf Boy
   D. List all defendants: Federal Bureau of Prisons, et al
   E. Court in which the lawsuit was filed (if federal, name the district; if state, name the county): Federal court/Middle District of Pennsylvania
   F. Name the judge to whom the case was assigned: Mariani, J.
   G. Basic claim made: Eighth Amendment
   H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Still pending.
   I. Approximate date of disposition:

(If you have more than one lawsuit, then it must be listed on another sheet of paper, using the same format. Regardless of how many cases you have previously filed, you will not be excused from filling out this section completely, and failure to do so may result in the dismissal of your case. Co-plaintiffs must also list all cases they have filed.)

A. Name of case and docket number: Civil no. 99-01-73. Federal District Court
B. Approximate date of filing lawsuit: Year of 2000
C. List all plaintiffs (and co-plaintiffs, if applicable), including any aliases: Christopher Alsop and Street Life Pagers
D. List all defendants: The Cincinnati Post
E. Court in which the lawsuit was filed (if federal, name the district; if state, name the county): Federal court/Southern District of Ohio
F. Name the judge to whom the case was assigned: S. Dlott
G. Basic claim made: Defamation by The Cincinnati Post newspaper
H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Affirmed on appeal.
I. Approximate date of disposition: October 30, 2001

(If you have more than one lawsuit, then it must be listed on another sheet of paper, using the same format. Regardless of how many cases you have previously filed, you will not be excused from filling out this section completely, and failure to do so may result in the dismissal of your case. Co-plaintiffs must also list all cases they have filed.)

# Jurisdiction and Venue

1. This is a civil action authorized by Bivens 28 Section 1331(A) to redress the deprivation under order of federal and state law of right secured by the Constitution of the United States of America. The court has jurisdiction under 28 u.s.c Section 1331(A).
2. The Middle District of Pennsylvania is an appropriate venue under 28 u.s.c Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## Plaintiff

3. The plaintiff Christopher Alsop, inmate no. 03078-061 is and was at all times mentioned herein, a prisoner of LSCI Allenwood in the custody of the Federal Bureau of Prisons; his current address is 286 Mayview Forest Drive, Cincinnati, OH 4515.

## Defendants

4. Defendant, D.K. White is the warden of LSCI Allenwood Federal Prison, and responsible for the welfare of all inmates of that prison, who at all times are mentioned in this complaint.
5. Defendant, Bret Brosious is the Assistant Health Services Administrator at LSCI Allenwood Federal Prison. He is legally responsible for and provides administrative supervision of the paraprofessionals (MLP, PA, NP, and other staff) within the medical area, who at all times are mentioned in this complaint.
6. Defendant Catherine Gore is a FNP-BC in health services at LSCI Allenwood Federal Prison, and was the plaintiff's provider, who at all times is mentioned in this complaint.
7. Serious medical needs
8. Plaintiff's serious condition is varicose and spider veins, with bilateral lower extremity venous reflux disease; right achilles tendonitis including, swelling and arthritis, that caused painful inflammation of his joints and surrounding tissue and moderate joint effusion, osteoarthritic change of the tibiotalar ligament.
9. Plaintiff cannot sit, stand, walk, or sleep for long periods of time without experiencing arm and leg numbness. Cramping of the right lower extremities, also causes his leg to feel itchy, heavy, and tired. Hypertension increases the inflammation of the right lower extremities that is caused by disruption of the normal one-way valvular system. When his veins bulge or become twisted, blood flow through the veins can become sluggish or slow, and this can cause superficial blood clots, known as superficial thrombophlebitis. From this stage, there is a great risk that a deep vein thrombosis (DVT) might occur. DVT can lead to major health problems, including, trophic ulcers and infectious blood clot formation, which in some cases could be fatal.

10. When the plaintiff walks his feet and lower extremities are in extreme pain. Plaintiff has fully lost strength in his legs several times, as a result of this serious condition. This serious condition has caused him to fall violently to the ground while trying to walk.
11. Plaintiff also has an injury to his right shoulder that is consistent with impingement syndrome, which is very painful because of his varicose vein condition. The right shoulder injury prevents him from sleeping on his right side; only sleeping on his left side has now resulted in pain on the left side (neck and butt). Plaintiff is unable to sleep on his stomach or back because of the right shoulder injury on May 17, 2017.
12. Plaintiff's previous orthopedic physicians, Dr. Ball and Dr. Washington requested a two month follow up for the plaintiff's right Achilles and shoulder tendonitis.
13. On or about April 4, 2017, the plaintiff was transferred to LSCI Allenwood which has a 20-30 incline hilly terrain. The plaintiff requested a number of Informal Resolution forms to explain why he should not have been transferred to LSCI Allenwood because of the 20-30 incline hilly terrain.
14. Counselor Martin D. Russell refused to give the plaintiff a grievance form to file against the medical staff. Counselor Russell used intimidation by threatening the plaintiff that he would be placed in the special housing unit and sent back to a medium. Plaintiff's previous unit manager, Al Farley witnessed the intimidation/threat, but refused to take any action against Counselor Russell.
15. On or about May 4, 2017 the plaintiff spoke with warden Lane about counselor Russell using foul language toward the plaintiff and denying him to use the grievance process.
16. Warden Lane directed the plaintiff to speak with the unit manager, Rothermel and request a grievance form. Mr. Rothermel also refused to provide the plaintiff with a grievance form.
17. Counselor Martin D. Russell denied the plaintiff a grievance form for 11 months.
18. On or about October 11, 2017, the plaintiff advised his previous provider John Stoltz PA-C, that he was losing the strength in his legs, which caused him to fall on three different occasions. The plaintiff requested a cane because walking up and down Allenwood's inclined hills could potentially cause tangible residual injury, but John Stoltz denied the plaintiff's request.
19. A month later, on November 6, 2017, the plaintiff lost his strength in his right leg while walking up the hill to the dining hall and collapsed.
20. The plaintiff injured his right arm, shoulder, knee, and head and was transferred to Allenwood Health Services by the institution's emergency vehicle; his provider, defendant, Catherine Gore FNP-BC was the driver.
21. Walking up and down Allenwood's hills caused the plaintiff's leg to get worse because three (3) months later the plaintiff could not walk in a straight line and had to hop up hills and relied on other inmates to assist him up and down Allenwood's hills.
22. On or about April 11, 2018, after being examined by orthopedist Dr. Ball, the diagnosis was positive for swelling crepitus, weakness, and limited range of motion. A CT scan of the right ankle showed extensive soft tissue and subcutaneous abnormality.
23. On or about April 11, 2018, the plaintiff spoke with defendant, Assistant Health Service Administrator (AHSA), Bret Brosious in the dining hall and requested a medical transfer

to any facility where the ground is flat and level because his condition of confinement considered a significant hardship and poses a substantial risk of serious harm to his health since he fell a number of times while travelling up and down Allenwood's hilly terrain (including details about the November 6, 2017 accident).

24. The plaintiff also advised defendant Bret Brosious that he was denied assistance to navigate up and down the compound. Defendant Brosious ignored the plaintiff's plea for help.
25. On or about April 16, 2018, defendant, counselor D. Russell gave the plaintiff a "BP-8" (Ex. 15), but he refused to give the plaintiff a "BP-9" (see BP-9 signed by another counselor). The plaintiff was able to obtain a grievance form from another inmate to turn in to counselor D. Russell. Counselor D. Russell warned the plaintiff about getting other inmates to get the grievance form for him
26. On or about March 28, 2018 and April 17, 2018, the plaintiff spoke with defendant Catherine Gore and requested a transfer to any facility where the ground is flat and level because his condition of confinement poses a substantial risk of serious harm to his health since he fell a number of times while travelling up and down Allenwood's hilly terrain. Defendant Gore told the plaintiff there was nothing she could do about it.
27. On or about April 30, 2018, defendant D.K. White viewed the plaintiff's administrative remedy "BP-9" and was aware that the plaintiff had fallen a number of times while travelling up and down Allenwood's inclined hills and his conditions of confinement subjected the plaintiff to cruel and unusual punishment, and posed a substantial threat of serious harm to his health.
28. On or about April 30, 2018, defendant D.K. White denied the plaintiff's request to be transferred to another facility with less hazardous terrain for an inmate who has difficulty walking.
29. On or about May 10, 2018, the plaintiff sent an electronic email to unit manager Mr. Beaver, about being intimidated in the presence of one of the officers (counselor D. Russell), but never got a response back.
30. On or about May 11, 2018, the plaintiff returned to the sick call and requested to use a wheelchair to navigate the compound because his legs were getting worse by the day.
31. Nurse Heather Britt discussed the plaintiff's wheelchair request with the PA/MLP and he told nurse Britt that the plaintiff does not require immediate care or treatment. The nurse advised the plaintiff that he was denied to use of a wheelchair and there was nothing more she could do.
32. On or about May 13, 2018, coming out of the dining hall and going down the hill, the plaintiff lost his strength in his right leg causing the crutch to slip, and the defendant fell in the mud and lost consciousness. The plaintiff suffered a serious headache and scratched up his knee, and injured his right arm and shoulder.
33. The plaintiff was once again transferred to health services by three correctional officers (who witnessed the plaintiff fall) in addition to nurse and defendant Laren Hofford, RN, by the institution's emergency vehicle.

34. On or about May 14, 2018, the plaintiff spoke with defendant Catherine Gore about his incident and requested a wheelchair, but she denied the plaintiff's request, and additionally, took away the crutch that the plaintiff was using.
35. On or about May 17, 2018, the plaintiff was walking up Allenood's inclined hill on his way to work and lost the strength in his right leg and collapsed on his right shoulder very hard. Officer M. Trump and other inmates witnessed the plaintiff's fall.
36. On or about May 18, 2018, the plaintiff went to the sick call and advised defendant Catherine Gore about his fall the day before and requested an MRI because his shoulder was hurting and he again requested to use a wheelchair, but defendant Catherine Gore denied the plaintiff's request and placed him to unit confinement in the living quarters, except during meals, pilline, and treatment. The plaintiff was unable to go to the dining hall and to the commissary for 18 days because he was repeatedly denied medical care (wheelchair/cane).
37. On or about June 7, 2018, the plaintiff underwent vascular surgery on his right leg. When the plaintiff arrived back inside the institution defendant Catherine Gore did a follow-up. She checked the plaintiff's blood pressure and provided him with a walker for one week.
38. On or about June 25, 2018, the plaintiff sent an email to associate warden Rokosky about his pending grievance from BP-10 in the northeast regional office. ( Ex. 160)
39. On or about June 26, 2018, the plaintiff requested a grievance form from defendant counselor D. Russell, but he refused to give the plaintiff a grievance form.
40. On or about June 26, 2018, the plaintiff spoke with associate warden Rokosky and gave him a paper cop-out advising that the plaintiff's counselor, Mr. Russell, refused to give him a grievance form.
41. On or about June 26, 2018, the plaintiff handed defendant counselor D. Russell a paper cop-out requesting to know the result of the plaintiff's administrative appeal (BP-10) that was pending in the northeast region.
42. On or about June 26, 2018, the Allenwood remedy coordinator received the plaintiff's grievance form and the northeast region decision.
43. On or about June 27, 2018, after the 4:30pm mail call, the plaintiff received his grievance form and the region decision from the Allenwood remedy coordinator. The plaintiff also received his paper cop-out that clearly showed that defendant counselor D. Russell tried to mislead the plaintiff, when counselor D. Russell said, "It will be a few weeks.", before the plaintiff would receive something in the mail status: closed denied 22 June 2018.
44. The plaintiff's northeast regional appeal (BP-10) was denied on June 22, 2018, and if the plaintiff would have waited a few weeks to get his appeal form back from defendant counselor D. Russell (total of 19 days) the plaintiff would have been untimely.
45. On or about the morning of June 27, 2018, the plaintiff was evaluated by a physical therapist, and it was recommended that the plaintiff receive a joint injection to reduce the pain in his injured shoulder.
46. On or about June 28, 2018, the plaintiff requested a BP-11 form counselor D. Russell to appeal the regional denial to the central office in Washington D.C. Counselor D. Russell told the plaintiff he was not going to give the plaintiff any grievance form and for the plaintiff to to come back in two weeks (July 12, 2018) when the regional decision comes

in the mail, along with the plaintiff's grievance form; on July 12, 2018, the plaintiff was placed in the Special Housing Unit (SHU) on false misconduct.
47. The plaintiff advised counselor D. Russell it should not take 19 days to receive the northeast region's decision back, after being denied and the plaintiff gave counselor Russell a copy of the northeast region's decision.
48. Counselor D. Russell still refused to give the plaintiff a grievance form until the plaintiff made it clear he was going to talk to the assistant warden about counselor D. Russell still denying the plaintiff grievance.
49. On or about June 28, 2018, the plaintiff spoke to assistant warden Rokosky about counselor D. Russell still denying the plaintiff to use the grievance process and the plaintiff requested a grievance so he could report the misconduct of counselor D. Russell. The assistant warden refused to give the plaintiff a grievance form and advised the plaintiff to write it up on a cop-out.
50. On or about June 29, 2018, the plaintiff spoke with and handed the cop-out to assistant warden Rokosky about being denied to use the grievance process since he arrived at LSCI Allenwood.
51. On or about July 11, 2018 the plaintiff filed a BP-9 grievance requesting defendant Catherine Gore to correct false misleading statements in his medical records.
52. On or about July 12, 2018, the plaintiff underwent surgery on his left leg. The plaintiff advised the vascular surgeon Dr. J. Franklin Oak, Jr. that he still had to wear compression stockings because the plaintiff's right ankle/foot was painful and hurt when walking. (Ex. 154) Out of retaliation because the plaintiff filed a grievance requesting defendant Catherine Gore to correct false misleading statements a day before she failed to provide the plaintiff with a walker for one week and allowed plaintiff to move around in pain post-surgery without assistance.
53. Catherine Gore downgraded the plaintiff from care-level II to care-level I which caused the plaintiff to be sent to FCI Raybrook, New York, which also has hilly terrain like Allenwood that caused pain in his feet when walking up and down the hill.
54. On or about July 12, 2018, when the plaintiff arrived back inside the institution, he learned that defendant Bret Brosious and technician Kevin Vincenzes had left health services early that day and went to the plaintiff's room to search it. His room was singled out for search by defendant Bret Brosious. The search was planned and not random.
55. Kevin Vincenzes and Bret Brosious retaliated against the plaintiff for filing a grievance against defendant Catherine Gore the day before and filing a lawsuit against the defendant(s).
56. Kevin Vincenzes and Bret Brosious took the plaintiff's legal documents related to his Bivens claims and poured water on his bed, clothes, and inside of his food and then wrote a false incident report to place the plaintiff in the SHU (Special Housing Unit).
57. On July 12, 2018, the plaintiff requested a grievance form from counselor D. Russell. He refused the plaintiff a grievance form and about 45 minutes later the plaintiff was escorted to the SHU.

## Count One

58. Defendant D.K. White showed deliberate indifference to the plaintiff's serious medical needs because he has/had the authority to put in a request to the Designation and Sentence Computation Grand Prairie Office in, Grand Prairie, TX to have the plaintiff transferred to another facility and/or could have ordered his staff to provide plaintiff with mobility assistance devices, instead Warden White stated, "Your condition is appropriately treated at this facility and your condition does not warrant, nor require a medical transfer."
59. Defendant D.K. White is not a medically trained specialist, and substituted his own judgment for professional opinion regarding the plaintiff's health and safety. He was deliberately indifferent to the plaintiff's health and safety which violated the plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment. The plaintiff ended up having two more accidents after defendant D.K. White declined to take the appropriate steps to abate the risk the plaintiff faced and it caused him pain, suffering, physical injury, emotional distress, and sleep deprivation.

## Count Two

60. AHSA Bret Brosious violated the plaintiff's Eighth Amendment right to the United States Constitution to be free from cruel and unusual punishment and/or deprivation of a base of human need when he failed to act despite his knowledge of a substantial risk of serious harm and when AHSA Brosious failed to act after he gained this knowledge that the medical staff was mistreating the plaintiff.
61. AHSA Bret Brosious failed to take the appropriate steps to abate the risk the plaintiff faced and it caused him pain, suffering, physical injury, emotional distress, and sleep deprivation.

## Count Three

62. Defendant Catherine Gore was deliberately indifferent to the plaintiff's serious medical needs because she was aware that the plaintiff was physically disabled, but she failed to assist him to get transferred to another facility without hills and/or provide him with mobility assistance devices and allowed the plaintiff to have accident after accident which denied him to shop in the commissary for three weeks including missing 54 straight meals between May 18 - June 5, 2018 in the dining hall. LSCI Allenwood video camera and ID scan inside the dining hall will verify the plaintiff's truthful statement, that his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment were violated. The injury caused him pain, suffering, physical injury, emotional distress, and sleep deprivation.
63. Defendant Catherine Gore failed to provide the plaintiff with a walker on July 12, 2018 (post-surgery), and allowed him to walk on painful feet, and violated the plaintiff's Eighth

Amendment right to the United States Constitution to be free from cruel and unusual punishment.

## Count Four

64. Defendant John Stoltz was deliberately indifferent to the plaintiff's serious medical needs because he was aware that the plaintiff was physically disabled and he required a cane, but he denied the plaintiff's request and the plaintiff ended up having three accidents which denied him to shop in the commissary for three weeks including missing 54 straight meals between May 18 - June 5, 2018 in the dining hall.
65. Defendant John Stoltz had the ability to take steps to abate the risks that the plaintiff faced, but he deliberately declined to do so and it violated the plaintiff's rights under the Eighth Amendment to the United States Constitution; it also caused the plaintiff serious pain, suffering, physical injury, emotional distress, and sleep deprivation.

## Count Five

66. The plaintiff had a disability, his medical restriction stated, no work around potentially dangerous machinery, no work requiring safety shoes, partial hearing loss no work in high noise areas and no food service work, no sports/weight, and soft shoes only.
67. The plaintiff's prior conditions of confinement at LSCI Allenwood are not hanicapped accessible as all inmates must walk up and down long hills that is on a 20-30 incline in order to access the dining hall, commissary, barbershop, library, recreation, health services, laundry, mailroom, or chapel. The plaintiff had no assistance and could not travel up Allenwood's inclined hills most of the time without assistance from the other inmates. The plaintiff's leg was so weak and painful he has been forced to decline physical therapy, barbershop, commissary, religious services, and 54 straight meals from the dining hall, rather than endure the pain, injury, and difficulty he would have had to endure walking up and down Allenwood's inclined hills.
68. Defendants D.K. White, Catherine Gore, John Stoltz, and Bret Brosious were aware of the plaintiff's medical condition, that was walking on painful varicose veins and he fell a number of times travelling up and down Allenwood's hills. The defendants refused to endorse his requests for a transfer to an institution with less hazardous terrain. The defendant took away the plaintiff's crutches and denied his request to use a cane or wheelchair, thereby exposing the plaintiff to injury due to an enhanced fall risk. The plaintiff was also placed on confinement to the living quarters which denied the plaintiff access to meals and facilities available to other prisoners.
69. This mistreatment denied the plaintiff the benefits of service by reason of his disability and Eighth Amendment rights to be free from cruel and unusual punishment and serious harm, or deprivation of a basic human need. Defendants D.K. White, Catherine Gore, and Bret Brosious failed to provide adequate medical care, and to reasonably accommodate the plaintiff in various prison programs, access to meals, commissary, and

other major life activities, which is a violation of the Eighth Amendment, as well as the Rehabilitation Act of 29 u.s.c 794.

## Prayer for Relief

WHEREFORE, the Plaintiff respectfully prays that this honorable court enters judgment:

1. Granting the plaintiff compensation in the amount of $600,000 against the defendant, D.K. White, and $200,000 in punitive damages for his Eighth Amendment claim for a total of $800,000.
2. Granting the plaintiff compensation in the amount of $200,000 against the defendant, Bret Brosious, and $200,000 in punitive damages for his Eighth Amendment claim for a total of $400,000.
3. Granting the plaintiff compensation in the amount of $600,000 against the defendant, Catherine Gore, and $200,000 in punitive damages for his Eighth Amendment claim for a total of $800,000.
4. The plaintiff also seeks a jury trial on all issues triable by a jury.
5. The plaintiff also seeks recovery of the cost in his suit and any additional relief this honorable court deems just, proper, and equitable.

Respectfully submitted

*Christopher Alsop*  8-19-2020
Christopher Alsop, pro se

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF PENNSYLVANIA

## Verification

I, Christopher Alsop, the undersigned in the petition, declaration under perjury that he is the petitioner in the above action, that he has read the above complaint and hereby verify that the matter alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the forgoing is true and correct, pursuit to 28 u. s .c 1746.

EXECUTED on: August 20, 2020.
DATE

*Christopher Alsop*
SIGNATURE

## Certificate of Service

A true and correct copy of the foregoing Bivens complaint was sent on August 20, 2020, by placing the same in the United States mail. Prepared using first-class postage certified and delivered to:

Clerk of Courts
235 N. Washington Ave
Scranton, PA 18503

Melissa Swauger, Asst. U. S. Attorney
228 Walnut Street Suite 220
Harrisburg, PA 17108

Warden, DK White
AHSA, Bret Brosious,
FNP-BC, Catherine Gore
Address: LSCI Allenwood Low
Federal Correctional Institution
ATT: Warehouse
RT 15, 2 mi N of Allenwood
Allenwood, PA 17810

_____
Christopher Alsop, pro se

TRULINCS 03078061 - ALSOP, CHRISTOPHER - Unit: ALF-L-A

---

FROM: LSCI Associate Wardens
TO: 03078061
SUBJECT: RE:***Inmate to Staff Message***
DATE: 06/27/2018 12:47:48 PM

You should be receiving this in the mail tomorrow. I was just received here yesterday. I am not sure of how or when the mail is delivered to you.

I trust this addresses your concern.

>>> ~^!"ALSOP, ~^!CHRISTOPHER" <03078061@inmatemessage.com> 6/25/2018 9:34 PM >>>
To: asst/Rokosky
Inmate Work Assignment: Rec/3

I filed a bp-10 (remedy ID 938205-R2) to Northeast Regional office which date received on may 25 2018 and response due date is June 24 today is June 25 2018 and I have not received a response from my Administrative Remedy Coordinator or notice of a continuance I would like to know the status because I only have 20 days to file a response...thank you

EX.160

J. Franklin Oaks Jr., D.O.,MHA,FACOS
SH Vascular Studies
700 High St
Williamsport, PA 17701
Phone: (570)321-2805 Fax: (570)321-2806

# Susquehanna Health

03078-061

## History & Physical

EXHIBIT 154

**Patient:** CHRISTOPHER ALSOP
**DOB:**
**Visit Type:** Return Office Visit

**Date:** 06/22/2018 12:36 PM
**Enc #:** No Soarian Encounter ID
**MRN:** 1245452

**PRIMARY CARE PHYSICIAN:** Patient None-emr

EXHIBIT 154

**REASON FOR VISIT:**
This 50 year old male presents for s/p R) GSV RF ablation..

CHIEF COMPLAINT: s/p R) GSV RF ablation.
HISTORY OF PRESENT ILLNESS:
1. s/p R) GSV RF ablation.
Chris is a follow-up today s/p R) GSV RF ablation done on 6-7-2018. His access site looks fine. He has complaints of his right leg feeling like it's giving out and not feeling very strong. No sores. Doesn't describe any rest pain. He's been wearing a TED hose compression stocking.

## CURRENT MEDICATIONS

| Medication | Sig Description |
|---|---|
| aspirin 81 mg chewable tablet | chew 1 tablet by oral route every day |
| atorvastatin 20 mg tablet | take 1 tablet by oral route every day |
| meloxicam 7.5 mg tablet | take 1 tablet by oral route every day |

ALLERGIES/INTOLERANCES:

| Ingredient | Reaction | Medication Name | Comment |
|---|---|---|---|
| NO KNOWN ALLERGIES | | | |

None

## PAST MEDICAL/SURGICAL HISTORY (Detailed)

| Disease/disorder | Onset Date | Management | Date | Comments |
|---|---|---|---|---|
| | | Bowel resection | | |
| | | Liver surgery age 5 | | |
| | | R) GSV RF ablation, infiltration of tumescent anesthesia | 06/07/2018 | |
| Hemorrhoids | | | | |
| Significant hearing loss-uses | | | | |

ALSOP, CHRISTOPHER   1245452            06/22/2018 12:36 PM Page: 1/3

C. Gore, FNP-BC
LSCI Allenwood

| | | |
|---|---|---|
| Resp | Neg | Respirations - Nonlabored. Breath Sounds - Clear Throughout. |
| Vasc | Pos | Posterior Tibial - Right Decreased Pulse. Dorsalis Pedis - Right Decreased Pulse. |
| Vasc | Note | 1+palp PT and DP. |

## IMPRESSION AND PLAN

01. **Varicose veins of both lower extremities with complications (I83.893):** s/p R) GSV ablation. Puncture site intact. Weakly palpable pulses. He's having pain with walking uphill. Describes balance and gait difficulties. Continue to wear his compression stockings for now. He is set up for his left leg RF ablation on July 12th. After this surgery, he'll need a <u>4 week post-op appt with a bilateral LE rule out DVT study as well as a bilateral LE arterial duplex for his weakly palpable peripheral pulses.</u>   } added to f/u

I, Tarah Williamson RN, am scribing for and in the presence of Dr. Frank Oaks. I, Dr.Frank Oaks, personally performed the services described in this documentation, scribed by Tarah Williamson RN in my presence, and it is both accurate and complete.
02. Status post endovenous radiofrequency ablation (RFA) of saphenous vein (Z98.890): See above.

ORDERS:
    VUS Leg Arteries Bilat Bilateral leg
    VUS Leg Venous Bil Bilateral leg     EXHIBIT 155

## FINAL MEDICATION LIST

| Medication | Sig Description |
|---|---|
| aspirin 81 mg chewable tablet | chew 1 tablet by oral route every day |
| atorvastatin 20 mg tablet | take 1 tablet by oral route every day |
| meloxicam 7.5 mg tablet | take 1 tablet by oral route every day |

J. Franklin Oaks Jr. D.O.,MHA,FACOS 06/28/2018

*Document generated by: Brenda Stopper 06/28/2018*

7/10/18
C. Gore, FNP-BC
LSCI Allenwood

ALSOP, CHRISTOPHER   1245452      06/22/2018 12:36 PM Page: 3/3

